IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BENJAMIN CLAYTON JOHNSON, FH-5409, )
    Petitioner, )
)
    v. ) 2:11-cv-639
)
GERALD ROZUM et al., )
    Respondents. )

MEMORANDUM and ORDER

Mitchell, M.J.:

    Benjamin Clayton Johnson an inmate at the State Correctional Institution at Somerset, by his counsel,[1] has presented a petition for a writ of habeas corpus. For the reasons set forth below the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

    Johnson is presently serving a twenty-six to fifty-two year sentence imposed following his conviction by a jury of attempted homicide, aggravated assault, carrying a firearm without a license, recklessly endangering another person and resisting arrest at Nos. CC 17842, 17833, 17834 and 17908 of 2000 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on March 31, 2003.[2] A timely appeal to the Superior Court was filed in which the issues presented were:

    I.    May the lower court violate Mr. Johnson's state and federal constitutional protections against double jeopardy by imposing consecutive sentences for aggravated assault and attempted murder when they were based upon one act and when this Court and the Supreme Court have said that these charges must merge?

    II.    Did the admission of irrelevant and prejudicial weaponry unrelated to the shooting and prejudicial journal entries seized from Mr. Johnson's bedroom deprive him of a fair trial?

---

[1] Johnson originally executed a pro se petition on May 8, 2011 and then counsel filed an amended petition on August 30, 2011.
[2] See: Amended Petition at ¶¶ 3,6

> III(A). May the Commonwealth deprive Mr. Johnson of a fair trial by urging the jury to "get mad" at him as it deliberates and thus, based its verdict on emotion rather than reason?
>
> III(B). Is it plain error for the Commonwealth to ask the jury to "get mad" at Mr. Johnson and may this plain error be reviewed on direct appeal?
>
> III(C). Was counsel ineffective for failing to object when the Commonwealth urged the jury to "get mad" at Mr. Johnson?
>
> III(D). Can this ineffectiveness issue be raised on direct appeal especially when the lower court addressed the issue in its opinion and the ineffectiveness is apparent on the record?[3]

On April 4, 2005, the Superior Court affirmed the conviction on the issues not alleging ineffective counsel but declining to address the latter issues prior to post-conviction proceedings.[4] Reargument was denied on June 9, 2005[5] and an application for allowance of appeal to the Pennsylvania Supreme Court was filed in which the issues presented were:

> I. In this issue of first impression for this Court, may the trial court violate Mr. Johnson's state and federal constitutional protections against double jeopardy by imposing consecutive sentences for aggravated assault and attempted murder when they were based upon one act?
>
> II. (A) May the Commonwealth deprive Mr. Johnson of a fair trial by urging the jury to "get mad" at him as it deliberates and, thus, base its verdict on emotion rather than reason?
>
> (B) As this error is apparent on the record, should it be capable of review on direct appeal either through a resurrected plain error analysis or through the ineffectiveness construct?
>
> III. Did the admission of irrelevant and prejudicial weaponry unrelated to the shooting and prejudicial journal entries seized from Mr. Johnson's bedroom deprive him of a fair trial?[6]

On May 18, 2006, leave to appeal was denied.[7]

---

[3] See; Answer at p.102. All page references to the documents contained in the Commonwealth's answer will be to the "Bates" page numbering.
[4] Id. at pp.194-209.
[5] Id. at p.258.
[6] Id. at p.269.
[7] Id. at p.336.

2

On September 18, 2006 Johnson filed a post-conviction petition. That petition was dismissed on May 28, 2008.[8] A timely appeal was filed in which the petitioner raised the following issues:

    a. Trial counsel an direct appellate counsel were ineffective for failing to object to/challenge on direct appeal Judge Zottola's jury instruction regarding attempted homicide, which on its face improperly stated the law by impliedly adding an additional element – serious bodily injury- to Appellant's attempted homicide charge and, as such, denied Appellant due process under both the state and federal Constitutions.

    b. Trial counsel and direct appellate counsel were ineffective for failing to object to/challenge on direct appeal Judge Zottola's jury instruction regarding attempted homicide, which, as a result of improperly setting forth the law, violated the law set forth in *Apprendi v. New Jersey* and its progeny and, as such, denied Appellant due process under both the state and federal Constitutions.

    c. Trial counsel was ineffective for failing to object to the Commonwealth's inflammatory closing argument, which was tantamount to prosecutorial misconduct and which denied Appellant due process under both the state and federal Constitutions.

    d. Trial counsel and direct appellate counsel were ineffective for failing to challenge the Constitutionality of 18 Pa.C.S. Section 1102(c), whose lack of direction for application by judges at trial creates a "procedural no-man's land" that violated the principles set forth in *Apprendi* and its progeny.[9]

On July 29, 2009, the denial of post-conviction relief was affirmed.[10]

A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which these same issues were presented.[11] Leave to appeal was denied on July 14, 2010.[12]

The instant pro se petition was executed on May 8, 2011[13] and subsequently amended by counsel on August 30, 2011.[14] In the amended petition, Johnson urges that he is entitled to relief on the following grounds:

---

[8] Id. at p.485.
[9] Id. at p.519.
[10] Id. at pp. 628-
[11] Id. at p.642.
[12] Id. at p.703.
[13] In his pro se petition Johnson alleged that he is entitled to relief on the grounds of merger of the aggravated assault and attempted murder charge; prosecutorial misconduct in referring to "get mad" in her closing argument; ineffective counsel for failing to object to the prosecutor's closing argument and a due process violation resulting from the introducing of irrelevant evidence of the petitioner's fire arm collection and personal journal entries.

3

a. The trial court violated petitioner's due process rights under both the Fifth and Fourteenth Amendments to the United States Constitution when it added the element of "serious bodily injury" to the crime of Criminal Attempt and instructed the jury that it must find this element beyond a reasonable doubt when the element was not charged in the Criminal Information nor is it found in the statutory definition of Criminal Attempt, 18 Pa.C.S. §901(a), but rather in a sentencing provision in the Pennsylvania Crimes Code, 18 Pa.C.S. §1102(c). the end result was a sentence that exceeded the statutory maximum in violation of Petitioner's Due Process Rights, his right to a fair trial by jury pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, and <u>Apprendi v. New Jersey</u>, and its progeny.

b. Trial counsel, Ernest Sharif, Esq. was ineffective for failing to object to the trial court's addition of this element to the crime and, accordingly, instructing the jury on the element, in violation of his right to effective assistance of counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, and <u>Strickland v. Washington</u>. Petitioner was prejudiced because he was sentenced to an additional 20 years in prison above the statutory maximum.[15]

The Commonwealth concedes that the instant petition is both timely filed and that the issues which the petitioner seeks to raise here have been properly presented to the courts of the Commonwealth in the first instance and for this reason are properly raised here.[16] However, the Commonwealth contends that these claims are meritless.

The factual background to this prosecution is set forth in the April 4, 2005 Opinion of the Superior Court summarizing the trial court's opinion:

> [Johnson] was a former employee of the City of Clairton who had been terminated from his employment with the City. On April 29, 2000, [Johnson] encountered Dominic Serapiglia, the Mayor of Clairton, in a coffee shop. [Johnson], who was upset at the time, told the Mayor that he was "going to shoot him," as well as members of City Council, the Police Chief, the Public Works Director, and the City Manager; listing each by name. The Mayor reported the confrontation to Sgt., DeMaio of the Clairton Police and, ultimately changes were filed against [Johnson].
>
> Frank Geletko, the Public Works Director for Clairton, testified that, a few days after the coffee shop incident, he saw [Johnson] circling the building where he worked and, as [Johnson] drove by, he made a hand motion towards the witness

---

[14] An amended filing supersedes the original filing. <u>In re Crysen/Montenay Energy Co</u>, 226 F.3d 160, 162 (2nd Cir.2000)("it is well settled that an amended pleading ordinarily supersedes the original and renders it of no legal effect"). See also: <u>Snyder v.Pascack Valley Hospital</u>, 303 F.3d 271,276 (3d Cir. 2002).
[15] See: Amended petition at pp.17-18.
[16] See: Answer of the Commonwealth at pp.18 and 20.

simulating the pointing and firing of a gun. On that same say, the witness was in his vehicle when he encountered [Johnson] standing in an alley. [Johnson] mumbled something and made the same gesture. The witness reported the incidents to the Clairton Police.

Michael Mursch, who was [Johnson's] co-worker in the Clairton Public Works Department, testified that on April 5, 1998 [Johnson] pulled out a gun and pointed it at him and cocked the trigger. The incident resulted in [Johnson's] employment termination. The witness also testified that, around the time of the threat made to Mayor Serapiglia and the gestures made to Mr. Geletko [Johnson] rode past him in a vehicle at a slow pace, made a similar gesture and said, "Bang" "Bang." The witness filed a report with the police.

On May 3, 2000, a warrant was issue for [Johnson's] arrest for crimes of Terroristic Threats. On that same date, the Clairton Police, including Sgt. DeMaio and Officer [John] Dunlap, accompanied by the Allegheny County Police, went to the home of [Johnson's] mother to place him under arrest. For their safety, the police formulated a plan to get [Johnson] to exit the home and to have him arrested outside of the home. During the arrest, which took place outside of the home, [Johnson] struggled with Sgt. DeMaio. During the struggle, Officer [] Dunlap observed a firearm in [Johnson's] waistband. Officer Dunlap drew his weapon and pointed it at [Johnson] who attempted to kick the weapon out of the officer's hand. Fearing an accidental discharge of the firearm, Officer Dunlap reholstered his weapon. [Johnson] was subdued, hand-cuffed, and taken to the Clairton Police Station where the weapon was retrieved from his person. [Johnson] was released on bond.

On October 19, 2000, Officer Dunlap, while on patrol in a marked vehicle, was speaking to Officer David Hart who was on foot patrol. While the two were speaking, an individual rode past them on a bicycle and stated words to the effect, "Kill" or "Killer Dunlap." Officer Dunlap attempted to follow the individual in his patrol car and encountered [Johnson] who was on a bicycle. [Johnson] began to yell profanities at the officer and rode away on the bicycle. The officer decided to cite [Johnson] and began to follow him. After failing to get [Johnson] to stop the bicycle, the officer pulled ahead of the bicycle, stopped and began to exit his vehicle.

Upon exiting his vehicle, Officer Dunlap felt several impacts upon his body and turned to the rear of his vehicle to see [Johnson] who was approximately three (3) feet away, shooting at him. The officer then went to the front of his vehicle to obtain cover. [Johnson] pursued the officer and continued to fire at the officer, striking him in the back. The officer observing children nearby and fearing for their safety and concerned that, if he continued to run, he may not survive the assault, turned towards [Johnson] and attempted to grab him. As Officer Dunlap struggled with [Johnson], he felt another impact on his shoulder but was able to get [Johnson] to the ground. At that point, another individual came to the officer's

5

aid. Soon thereafter [Johnson] was subdued, arrested, and the gun recovered. Officer Dunlap asked [Johnson] why he had shot him and [Johnson] responded, "[B]ecause you dropped a hammer on me with DeMaio.

Officer Dunlap had been shot in the abdomen, the right hand and left shoulder. He was life-flighted to a trauma unit where he underwent multiple surgeries…

After the shooting and arrest of [Johnson} a search was conducted of his home as a result of the search, among other things, the following items were located: an assault rifle and ammunition found under [Johnson's] bed; a .38 caliber revolver found under [Johnson's] bed; a pellet pistol found on a dresser; [and] a magazine for a Glock .45 handgun…[17]

The first issue which Johnson raises in his amended petition is that the trial court violated his due process rights by adding the element of "serious bodily injury" in its instructions on the crime of criminal attempt. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime" 18 Pa.C.S.A.§901(a). In this regard, the court instructed the jury,

In order to find the defendant guilty of criminal attempt at homicide, you must also make a determination that the defendant caused serious bodily injury…

I've talked about serious bodily injury. It's necessary for me to define for you what serious bodily injury is.

Serious bodily injury is bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ (TT. 9/3/2002 pp.752-753).

In its July 29, 2009 Memorandum, the Superior Court addressed this issue writing:

We note that the record reflects that Appellant was on notice prior to trial that the Commonwealth would seek application of 18 Pa.C.S.A. §1102(c)[18], which allows for a sentence of up to 40 years where attempted homicide results in serious bodily injury. The trial court, in its jury instruction, placed the issue of serious bodily injury before the jury, and the jury found beyond a reasonable doubt that the attempted homicide resulted in serious bodily injury. Finally, we do not believe there is any underlying merit to the argument that the trial court should have given the jury the option of finding Appellant guilty of attempted homicide that did not result in serious bodily injury, the overwhelming, uncontradicted

---

[17] See; Answer at pp.194-196.
[18] At the time of Johnson's conviction, the application provisions of §1102(c) provided: "[A] person who has been convicted of attempt, solicitation or conspiracy to commit murder … *where serious bodily injury results* may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 40 years" (emphasis added).

6

record evidence indicates that Officer Dunlap did sustain a serious bodily injury.[19]

The petitioner now argues that the issue of serious bodily injury is a sentencing issue and not one of guilt to innocence. His argument is misplaced. In <u>Commonwealth v. Johnson</u>, 910 A.2d 60,67 (Pa.Super. 2006) the court wrote:

> Appellant argues that the seventeen and one-half to forty year sentence imposed on the conviction for attempted murder was illegal because there was not sufficient evidence to support a finding of "**serious bodily injury**" as that term is defined by the Crimes Code. The trial court, reasoned that "serious bodily harm" had been established when the jury found appellant guilty of the companion offense of aggravated assault. Although we agree with appellant that the sentence is illegal, we do so on a basis other than that presented by appellant, and here hold that under ***Apprendi v, New Jersey***, 530 U.S. 466 (2000), it was not the prerogative of the trial court, but solely the responsibility of the jury in this case to find, beyond a reasonable doubt, whether a **serious bodily injury** resulted from the instant attempted murder.

Specifically in <u>Apprendi</u> the Court citing to <u>Jones v. United States</u>, 526 U.S. 227,243,n.6 (1999) held:

> "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt."

For this reason as both a matter of state and federal law, the submission of this aggravating condition for consideration by the jury was mandated[20] and does not provide a basis for relief here.

    The petitioner's second argument in his amended complaint is that counsel was ineffective for failing to object to this "additional element" being submitted to the jury. As discussed above, the argument was meritless, and counsel cannot be deemed ineffective for failing to raise it. <u>Real v. Shannon</u>, 600 F.3d 302 (3d Cir.2010).

    Accordingly, because the issues raised here are without merit, the petition of Benjamin Clayton Johnson for a writ of habeas corpus will be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

---

[19] Id. at p.631.
[20] The petitioner appears to argue that although the trial court was acting properly in so instructing the jury, its decision to submit the aggravating circumstance to the jury is not supported under Pennsylvania law. Had the court failed to submit this issue, clearly a violation of <u>Apprendi</u> would have occurred warranting relief. In addition, the state court precedent had also approved of such a submission.

ORDER

AND NOW, this 27th day of December 2011, for the reasons set forth in the foregoing Memorandum, IT IS ORDERED that the petition of Benjamin Clayton Johnson for a writ of habeas corpus is DISMISSED, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is DENIED.

s/Robert C. Mitchell  
United States Magistrate Judge